```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

JOE A. PENNINGTON,                )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    No. 3:05-1075
                                  )    Judge Echols
                                  )
METROPOLITAN GOVERNMENT OF        )
NASHVILLE AND DAVIDSON            )
COUNTY, *et al.*,                 )
                                  )
        Defendants.               )

### MEMORANDUM

Pending before the Court is Defendants Metropolitan Government of Nashville and Davidson County ("Metropolitan Government"), Assistant Chief Joseph Bishop ("Bishop"), and Captain Michael T. Hagar's ("Hagar") "Motion to Dismiss Raising Qualified Immunity" (Docket Entry No. 9). Plaintiff Joe A. Pennington ("Pennington") has filed a response to the Motion (Docket Entry No. 20) and Defendants have filed a reply (Docket Entry No. 22).

### I.  FACTUAL BACKGROUND

Pennington brings this suit in two counts. In Count I, Pennington alleges that his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, his Fourteenth Amendment rights to be accorded equal protection of the laws and due process, and his Fifth and Sixth Amendment rights to counsel were violated by Defendants Bishop and Hagar. He also contends in Count II that the Metropolitan Government permitted, encouraged, and tolerated an official pattern, practice or custom of its law enforcement officers violating citizens' constitutional

1

rights, as well as failed to adequately train and educate its police offers in the proper procedures to be utilized in searches and seizures. The facts underlying Pennington's Complaint are as follows.

Pennington is a police officer employed by the Metropolitan Government. (Complaint ¶ 1). On December 25, 2004, Pennington, along with a female friend and two male friends, patronized the Red Iguana, a local business which serves alcoholic beverages. (Id. ¶¶ 8-11). While on the premises, one of Pennington's friends, Kevin Covington ("Covington") became involved in an altercation with another patron. (Id. ¶¶ 11-12). Employees of the Red Iguana interceded in the altercation and allegedly kicked Covington in the head. (Id. ¶ 13). Pennington then attempted to help Covington to his feet and was assaulted by employees of the Red Iguana. (Id. ¶ 14). Solely to maintain his personal safety (and not to exert his police authority), Pennington notified the employees he was a police officer and that they should immediately stop the assault. (Id. ¶¶ 15-16). Pennington then left the building and Red Iguana employees called the police department for assistance. (Id. ¶ 17).

Police officers, including Captain Hagar, arrived on the scene and spoke with several witnesses. All of the witnesses allegedly told the police that Pennington had not been involved in any misconduct at the Red Iguana. (Id. ¶ 20). Nevertheless, Hagar, at the direction of Assistant Chief Bishop, ordered Pennington to go to Central Station to take an Intoxilyzer Alcohol Analyzer test. (Id. ¶¶ 21-22).

Pennington was transported by a police sergeant to Central Station and held for three hours where he was not free to leave. (Id. ¶¶ 23, 25). While there, Pennington was interrogated without being given his Miranda warnings or being allowed to speak with counsel. (Id. ¶ 24). Pennington was also forced to submit to a breathalyzer test. (Id. ¶ 25).

A subsequent investigation revealed that Pennington had not violated any laws, codes, or policies. As a result of these events, Pennington filed this lawsuit.

## II. STANDARD OF REVIEW

In evaluating a Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990). The Court should not dismiss a Complaint unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of his claims that would entitle him to relief. See id.

## III. APPLICATION OF LAW

Although captioned as a "Motion to Dismiss Raising Qualified Immunity," Defendants' Motion to Dismiss is not strictly limited to that affirmative defense. Fairly read, the Motion seeks dismissal of Pennington's Fourth Amendment claim for unlawful seizure and his Fourteenth Amendment claim for denial of due process on qualified immunity grounds. Defendants assert substantive challenges to Pennington's Fifth and Sixth Amendment claims, as well as his Equal Protection Clause claim under the Fourteenth Amendment. Since the

3

claims against the Metropolitan Government hinge upon the liability of Bishop and Hagar, it too moves for dismissal.

**A. Qualified Immunity: Pennington's Fourth Amendment Seizure Claim and Fourteenth Amendment Due Process Claim**

Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Sixth Circuit has set forth the analysis to be employed in determining whether the defense of qualified immunity applies:

> [A]s a precursor to the Harlow qualified immunity analysis, a court must first determine whether any constitutional violation occurred, let alone the violation of a clearly established right. E.g., Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). Consequently, if [the court] find[s] no constitutional violation, then the case must be dismissed at this threshold stage[.] Where a constitutional violation exists, the court must next determine whether the right infringed was clearly established - by decisions of the Supreme Court, this Court, or other Courts of Appeal - at the time the defendant allegedly infringed it. See Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir. 2002) (citing Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir. 1993)). Finally, if the right is clearly established, we cannot impose liability on a state official unless "the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right[ ]." Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999)(en banc) (citing Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

McKinley v. City of Mansfield, 404 F.3d 418, 429-30 (6th Cir. 2005). With these standards in mind, as well as those governing motions to

dismiss, the Court turns to Defendants' qualified immunity argument.

Defendants rely on Grow v. City of Milwaukee, 84 F.Supp.2d 990 (E.D. Wis. 2000) and Driebel v. City of Milwaukee, 298 F.3d 772 (7th Cir. 2002) for their position that Pennington's Fourth Amendment seizure claim and Fourteenth Amendment due process claim should be dismissed. While those two cases, when read together, generally support Defendants Hagar and Bishop's position, they were decided in a different procedural posture.

In Grow, the court considered a motion for summary judgment on claims brought by Milwaukee police officers in relation to their having to submit to breathalyzer tests while off duty. The factual scenario underlying one of the officer's claims is remarkably similar to the facts presented here.

Officer Jean Docter was attending a Serbian day festival in Milwaukee. A fight broke out and Docter, attempting to stop the fight, was struck in the head. She then called 911 and several police officers were dispatched to the festival. Upon the officers' arrival, Docter approached a sergeant to file a complaint against the person who struck her. The sergeant suspected Docter was intoxicated. After consultation with supervisors, the sergeant ordered Docter to accompany police to the station to take an Intoxilyzer test. When the test showed Docter had .17 grams of alcohol per 210 liters of breath, Docter was suspended for five days. The district court found that Docter had been "seized" under the Fourth Amendment, but that the seizure was reasonable since

5

Docter was intoxicated in a public place. Grow, 84 F.Supp.2d at 1003-1004.

The conclusion in Grow that Officer Docter had been "seized" for purposes of the Fourth Amendment was called into doubt by the Seventh Circuit's ruling on the grant of summary judgment in Driebel. There, in the context of discussing other Milwaukee police officers' claims that they had been wrongfully ordered by supervisors to remain on duty to accompany detectives to headquarters to answer questions during the course of criminal investigations of their activities while on duty, the Seventh Circuit wrote:

> Grow fails to acknowledge that police officers: (1) may reasonably believe, based upon their workplace obligations to comply with department's guidelines and regulations, that their employment relationship will be severed if they refuse or disobey an order, direction, or request to accompany detectives to the department's headquarters; but (2) lack any reasonable basis to feel that they will be restricted by force or a show of lawful authority in their freedom of movement or their ability to terminate the encounter.

Driebel, 298 F.3d 642. The Seventh Circuit then observed: "Since the Fourth Amendment does not protect against the threat of job loss, the relevant constitutional inquiry must focus on whether reasonable people in the position of the subordinate officers would have feared seizure or detention if they had refused to obey the commands given by their superior officers." Id.

Given the procedural posture of this case, the Court cannot make "the relevant constitutional inquiry" as to whether a reasonable person in Pennington's position would have feared seizure or detention. Nor can the Court determine whether Hagar

6

and Bishop responded lawfully in light of the situation presented to them.

The Court does not know, as in Grow, whether Pennington appeared to be intoxicated. Nor does the Court know exactly how Pennington ended up at the police station and what exactly transpired there. The Complaint alleges Pennington was "ordered" by Hagar to come with him to the Central Station; Hagar told Pennington "it was the order of Defendant Bishop that he [Pennington] be taken into custody and given a[n] Intoxilyzer Alcohol-Analyzer test"; Pennington was taken by a sergeant and held at the station for three hours; Pennington was interrogated and forced to submit to a breathalyzer test; and during this period, Pennington was "detained by and in custody of the Metropolitan Police department and was not free to leave[.]" (Complaint ¶¶ 21-25).

When the inferences to be derived from those facts are construed in Pennington's favor, it is possible for him to state a claim for the deprivation of his right to be free from unlawful seizure and to be accorded due process, even in light of Grow and Driebel. After all, while "nothing in the Fourth Amendment endows public employees with greater workplace rights than those enjoyed by the private sector," police officers "do not surrender their freedoms when joining the police force." Driebel, 298 F.3d at 637.

It is premature at this juncture to rule, as a matter of law, that Pennington can prove no set of facts which would entitle him

to relief on his Fourth Amendment claim and Due Process claim under the Fourteenth Amendment. Therefore, the Motion to Dismiss those claims will be denied, although it is certainly possible that the Court will revisit this issue in the context of summary judgment based upon the record developed after discovery. See, Jackson v. Shultz, 429 F.3d 586, 590 (6th Cir. 2005)(where complaint is sufficiently pled, the question of qualified immunity may be revisited after discovery).

**B.  Fifth and Sixth Amendment Claims**

Pennington claims that his Fifth and Sixth Amendment rights were violated when he was questioned without the benefit of Miranda warnings and in the absence of counsel. Defendants assert Pennington has failed to state a claim with regard to these constitutional provisions. Pennington has not responded to those arguments.

As Defendants point out, even a broad reading of Plaintiff's Complaint does not suggest he was ever charged with, let alone prosecuted for, a crime. In fact, a fair reading of the Complaint suggests that no charges were ever filed, given Pennington's allegation that an investigation revealed he had not violated any code provisions, criminal laws, or police regulations. (Complaint ¶ 26).

Pennington's complaint fails to state a claim under the Fifth Amendment. The Fifth Amendment protects against compelled self-incrimination. Chavez v. Martinez, 538 U.S. 760, 766 (2003). A civil claim for damages based upon an officer's failure to read a

8

suspect his or her <u>Miranda</u> warnings is "squarely foreclosed" by <u>Chavez</u>. <u>McKinley v. City of Mansfield</u>, 404 F.3d 418, 432 n.13 (6th Cir. 2005).

Nor can Pennington state a claim because he was denied the assistance of counsel under the Fifth Amendment. "[F]ailing to follow <u>Miranda</u> procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created." <u>Jones v. Cannon</u>, 174 F.3d 1271, 1291 (11th Cir. 1999)(collecting cases). That is, a civil rights plaintiff "has no free-standing Fifth Amendment claim for denial of counsel during his interrogation." <u>James v. York County Police Dept.</u>, 160 Fed. Appx. 126, 133 (3d Cir. 2005).

Moreover, "[t]he Sixth Amendment right to counsel . . . only attaches at the inception of formal criminal proceedings." <u>Wofford v. Evans</u>, 390 F.3d 318, 322 n.1 (4th Cir. 2004). Where no such proceedings are brought, the failure to provide counsel cannot serve as a basis for a claim under the Sixth Amendment. <u>Id</u>., accord, <u>Howard-Barrows v. City of Haltom City</u>, 106 Fed. Appx. 912, 914 (5th Cir. 2004).

## C.  **Fourteenth Amendment Equal Protection Claim**

Defendants also move to dismiss Pennington's equal protection claim on the grounds that he has failed to plead he was treated differently than others similarly situated. Again, Pennington has not responded to this argument.

9

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)(citation omitted). "While it is true that the plaintiffs need not prove this class-based discrimination in their complaint, they must at least allege some sort of animus." Perry v. Southeastern Boll Weevil Eradication Foundation, 154 Fed. Appx. 467, 477 (6th Cir. 2005).

In this case, Pennington makes absolutely no allegation that he was treated differently than others who may have been involved in a similar situation. "To plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment 'compared with others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006)(citation omitted). No such allegations are made in this case and, in fact, no impermissible consideration is even alleged. As such, the Complaint fails to state an Equal Protection claim. See, Rathburn v. Wilkinson, 1999 WL 96649 *1 (6th Cir. 1999)("the racial discrimination claim was not clearly raised in the plaintiffs' complaint - the plaintiffs' vague assertions of racial

10

discrimination were not sufficient to state a valid equal protection claim").

### IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss (Docket Entry No. 9) will be granted in part and denied in part. The Motion will be granted with respect to Plaintiff's Fifth and Sixth Amendment claims and his Equal Protection claim under the Fourteenth Amendment. The Motion will be denied with respect to Plaintiff's Fourth Amendment claim and his Due Process claim under the Fourteenth Amendment.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11